IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOEY L. STARR,**

       **Plaintiff,**

  vs.                                     **Civil Action 2:12-cv-290**
                                                     **Judge Graham**
                                                     **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

**REPORT AND RECOMMENDATION**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits.  This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 16, the Commissioner's *Memorandum in Opposition*, Doc. No. 17, and plaintiff's *Reply to Defendant's Memorandum in Opposition*, Doc. No. 18.

    Plaintiff Joey L. Starr filed his application for benefits on November 10, 2009, alleging that he has been disabled since November 15, 2007.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on August 9, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a

vocational expert.  *PAGEID* 76.  In a decision dated September 1, 2011, the administrative law judge concluded that plaintiff is not disabled.  *PAGEID* 54.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review.  *PAGEID* 43-45.

Plaintiff was 36 years of age on the date the administrate law judge issued his administrative decision.  *See PAGEID* 54, 197.  Plaintiff has a limited education and is able to communicate in English.  *PAGEID* 67.  Plaintiff was last insured for disability insurance purposes on December 31, 2012.  *PAGEID* 54.  Plaintiff has past relevant work experience as a groundskeeper and as a stock clerk.  *PAGEID* 121-22.  He has not engaged in substantial gainful activity since November 15, 2007, *PAGEID* 56, although he worked for four or five months in 2009 for a landscaping company.  *PAGEID* 88, 221.

In his *Statement of Errors*, plaintiff does not challenge the administrative law judge's evaluation of the medical evidence relating to his alleged impairments.  Rather, plaintiff argues that the administrative law judge erred in concluding that plaintiff does not meet the requirements of Listing 12.05C, in determining plaintiff's residual functional capacity ("RFC") assessment, and in posing hypothetical questions to the vocational expert.  *See Statement of Errors*, pp. 12-18.  The Court will therefore limit its consideration of the record to these issues.

**I.   Evidence of Record**

Plaintiff's school records reflect a history of hearing loss in the left ear and behavior problems. *PAGEID* 297. In 1991, when plaintiff was 16 years old, testing indicated a verbal IQ score of 81, a performance IQ score of 94, and a full scale IQ score of 85. *PAGEID* 300-02. A tutor helped him with tests and classroom assignments. *PAGEID* 297.

On October 4, 2008, plaintiff underwent a comprehensive psychiatric evaluation by Christopher Sanders, Ph.D. *PAGEID* 336-42. Plaintiff reported depression, night terrors, anxiety and visual hallucinations. *PAGEID* 338. During the evaluation, plaintiff exhibited poor eye contact, flat facial expressions, subdued behavior, slowed mental activity, a depressed mood and a flat affect; he appeared to be distracted. *PAGEID* 338-42. Plaintiff's memory and ability to calculate and engage in abstract thinking were impaired. *PAGEID* 340-41. Plaintiff was able to perform a simple three-step command with some difficulty. He reported being able to make breakfast, play on the computer and shop at Walmart. *PAGEID* 341. Dr. Sanders opined that plaintiff could not manage his own funds and that the likelihood of emotional deterioration in the work environment was high. According to Dr. Sanders, plaintiff was impaired in his ability to understand and remember very short and simple instructions, to understand and remember detailed instructions, to maintain concentration and attention, to accept instructions from a supervisor

3

and respond appropriately, to sustain an ordinary routine without special supervision, to complete a normal workday/workweek without interruptions at a constant pace, to interact with coworkers, and to deal with changes in the work setting. *PAGEID* 342.

Plaintiff underwent a second consultative psychological exam on January 30, 2010, by Ronald J. Olah, Ph.D. *PAGEID* 496-502. Plaintiff reported that he had received no medical treatment since 2009 because he lacked insurance. *Id*. Plaintiff believed that he is disabled because "I don't do things I used to do. I don't have the meds I used to take. A number of stuff. I forget to get up and go to work." *PAGEID* 496. He also reported a history of anger issues, problems with people in authority, and problems getting along with supervisors and co-workers. *PAGEID* 497. Plaintiff reported difficulty following instructions and completing even repetitive tasks. *Id*. He also reported depression, weight gain, mood swings, recurrent nightmares, auditory hallucinations, irritability and problems sleeping. *Id*. He spends his day "[p]laying with the dog. Wandering around. Talking with people over the computer. If I remember, there's a game I like to play." *PAGEID* 499-500. Plaintiff is able to write letters, tell time, count change and drive a car. *PAGEID* 500.

Dr. Olah reported a blunted and restricted affect. Plaintiff was not fully alert during the interview, but did not demonstrate frank confusion. *PAGEID* 498-500. On the WAIS, plaintiff achieved a full scale IQ score of 63. *Id*. According to Dr. Olah, because plaintiff

4

was visibly depressed during the testing session, the score "may be only a minimal estimate of his capabilities." *Id*. Moreover, plaintiff "revealed a great deal of variability in ability levels across indices;" nevertheless, there was a 95% chance that plaintiff would obtain a score between 60 and 68 if tested again. *Id*. Dr. Olah diagnosed major depressive disorder and borderline intellectual functioning. *Id*.

According to Dr. Olah, plaintiff was moderately impaired in his ability to relate to others, to understand, remember, and follow instructions, to maintain attention and concentration and to perform simple repetitive tasks; plaintiff may have difficulty performing simple, repetitive tasks. His ability to withstand the stress and pressures associated with day-to-day work activity was also moderately impaired. *PAGEID* 501.

Jennifer Swain, Psy.D., reviewed the record for the state agency on February 17, 2010. *PAGEID* 503-16. According to Dr. Swain, plaintiff had a moderate impairment in his ability to: (1) remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept

5

instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (9) respond appropriately to changes in the work setting. *PAGEID* 517-18.  Dr. Swain concluded that plaintiff is "capable of simple to moderate tasks in a setting which does not require more than occasional contact with the public," and that he "would likely perform best in a more solitary setting with no over-the-shoulder supervision." *PAGEID* 519.

In July 2010, plaintiff was examined by a psychologist for a county welfare agency. *PAGEID* 595-96.  Plaintiff was described as depressed and lacking in personal hygiene, with soft and mumbled speech and a constricted affect. *Id*.  The psychologist diagnosed major depressive disorder and post-traumatic stress disorder. *Id*.  Plaintiff was characterized as "unemployable" for a period of 12 months or more. *Id*.

In March 2011, plaintiff began monthly treatment sessions with Debbie Marshall, a certified nurse practitioner. *PAGEID* 630.  In August 2011, Ms. Marshall opined that plaintiff was seriously limited in his ability to: (1) maintain regular attendance and be punctual within customary, usually strict tolerances; (2) sustain an ordinary routine without special supervision; (3) work in coordination with or proximity to others without being unduly distracted; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms; (5) deal with normal work stress; (6) maintain regular

6

attendance; (7) understand and remember detailed instructions; (8) carry out detailed instructions; and (9) deal with stress of semiskilled and skilled work. *PAGEID* 632-33. As used by Ms. Marshall, the term "seriously limited" means "less than satisfactory, but not precluded in all circumstances." *Id*.

## II. Administrative Hearing

Plaintiff testified at the administrative hearing that he has an 11th grade education in classes for the learning disabled. *PAGEID* 108. It took him "a while to learn how to ride a bike," and "longer to learn how to do things that normal kids would already be able to do." He also had anger problems. *PAGEID* 114-15.

As to his mental impairments, plaintiff testified that he suffers from bipolar disorder and depression, as a result of which he feels tired and worthless and has suicidal thoughts. Nightmares limit him to no more than three to four hours of sleep per night. *PAGEID* 82, 95-96, 98-102, 110-12, 118. Anger management problems cause him to cuss people out at work and prevent him from working. *PAGEID* 93-95.

Plaintiff last worked full-time for four to five months in 2009 as a landscaper, earning approximately $11,408. *PAGEID* 88-89. In that position, he received instructions from, and worked alongside, his supervisor. *Id*. He was laid off when the season ended, but was unable to return to work when asked in October 2009 because of his physical and mental state. *PAGEID* 88-89, 104.

Plaintiff testified that he lives with his mother and does no

7

cooking or cleaning. He can care for his personal needs. *PAGEID* 84, 118.  Plaintiff walks his dog every day (less than two blocks), plays computer games on occasion, and taught himself to replace computer parts.  *PAGEID* 116-17.

The vocational expert testified that plaintiff's past relevant work as a groundskeeper was semi-skilled and, as performed by plaintiff, required heavy exertion.  His work as a stock clerk - retail was a semi-skilled position generally performed at the heavy exertional level.  *PAGEID* 122.  The vocational expert was asked to assume a claimant with plaintiff vocational profile who is limited to light exertion and who

> would be unable to climb ladders, ropes or scaffolds, could occasionally climb ramps and stairs, could also occasionally stoop, kneel, crouch, and crawl, would need to avoid jobs requiring fine hearing capabilities, would also need to avoid an environment that would have a loud background noise, would also need to avoid hazards, such as unprotected heights, dangerous moving machinery and driving as part of work, would be limited to doing simple routine, no more than three to four step tasks and in [an] environment without fast paced production demands and with occasional interaction with others.

*PAGEID* 122-23.  The vocational expert responded that such a claimant could not perform plaintiff's past relevant work, but would be able to perform unskilled jobs at the light exertional level, including such jobs as inspector and laundry folder, of which there are 15,000 and 25,000 positions in the state, respectively.  *PAGEID* 124.

**IV. Administrative Decision**

In his decision, the administrative law judge found that

8

plaintiff's severe impairments consist of a

> history of a left canal down mastoidectomy, chronic left mastoiditis, hearing loss on the left, right knee lipoma, lumbar degenerative disc disease, lumbar disc herniation, peripheral neuropathy, back spasms, abnormal proprioception associated with the left mastoidectomy and hearing loss, seizures, learning disability, adjustment disorder with depressed mood, major depressive disorder, psychotic disorder, nightmare disorder, dysthymic disorder, PTSD, and borderline intellectual functioning (20 CFR 404.1520(c)).

*PAGEID* 56.  Plaintiff's impairments, whether considered singly or in combination, neither meet nor equal a listed impairment, including Listing 12.05.  *PAGEID* 57.

With regard to Listing 12.05C, which addresses mental retardation based on I.Q. scores, the administrative law judge found that the requirements of the Listing were not met.  *PAGEID* 57-59.  Specifically, the administrative law judge found that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70. . . ." *Id*.  The administrative law judge noted that the January 2010 I.Q. testing, on which plaintiff achieved a full scale IQ score of 63, did not represent a valid measure of plaintiff's cognitive functioning because plaintiff was not taking his medications and was "visibly depressed" during the testing and because Dr. Olah reported that the score "may be only a minimal estimate of his capabilities." *Id*.  The administrative law judge also noted the result of an I.Q. test administered when plaintiff was 16, on which plaintiff achieved a verbal IQ score of 81, a performance IQ score of 94, and a full scale IQ score of 85.  *PAGEID* 297-304.

9

The administrative law judge went on to find that plaintiff has the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; must avoid jobs requiring fine hearing capabilities; must avoid working in environments with loud background noise; must avoid jobs exposing him to hazards such as dangerous moving machinery or unprotected heights; and cannot drive as part of work.  Further, he is limited to simple, routine work involving no more then 3-4 step tasks in an environment without fast-paced production demands that involves only occasional interactions with others.

*PAGEID* 59.

In making this finding, the administrative law judge accorded significant weight to the opinion of Dr. Olah, which was "consistent with the examination, the objective evidence, and the claimant's ability to use computers, talk over the internet, and walk the dog." *PAGEID* 66.  Less weight was given to the opinion of the initial consultative psychological examiner, Dr. Sanders, "as his assessment is vague as to the degree of limitation in each relevant area." *PAGEID* 66.

The administrative law judge gave little weight to the opinion of the county welfare psychologist because plaintiff was receiving no treatment or taking medication at the time of the examination and because the assessment was inconsistent with plaintiff's "reported ability to use and fix computers and take daily walks with his dog." *PAGEID* 66.  The administrative law judge also gave little weight to the opinion of the nurse practitioner because a nurse practitioner is

not an acceptable source under the Commissioner's regulations and because she had only recently begun her treatment of plaintiff at the time she made her assessment. *Id*.

The administrative law judge discounted plaintiff's subjective complaints, finding that those complaints were not credible to the extent that they were inconsistent with the residual functional capacity assessment found by the administrative law judge. *PAGEID* 60.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff's impairments preclude the performance by him of his past relevant work as a groundskeeper and stock clerk, but would permit the performance of a significant number of other jobs in the national economy. *PAGEID* 67-68.

The administrative law judge accordingly found that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 69.

**V.    Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in concluding that plaintiff does not meet the requirements of Listing 12.05C.  *Statement of Errors*, p. 18. Specifically, plaintiff argues that the administrative law judge erred in finding that plaintiff did not have a valid verbal, performance, or full scale IQ between 60 and 70, because Dr. Olah, the doctor who administered plaintiff's IQ test, did not conclude that plaintiff's January 2010 full scale IQ score of 63 was invalid.  *Id*.

Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive

12

> functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . . (C) [the claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).  A claimant must establish three elements in order to satisfy Listing 12.05(C): that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) that he has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.  *See also Foster v. Harris*, 279 F.3d 348, 354–55 (6th Cir. 2001). Current IQ scores do not alone establish that the claimant suffered subaverage intellectual functioning or deficits in adaptive functioning during the developmental period.  "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491–92 (6th Cir. 2010) (citing *Foster*, 279 F.3d at 354–55).

In rejecting plaintiff's 2010 IQ scores, the administrative law judge noted that plaintiff was not taking his medications and that he was "visibly depressed" during testing; moreover, Dr. Olah indicated

13

that the score "may be only a minimal estimate of his capabilities" and that there was a discrepancy between plaintiff's 2010 score and his scores when he was tested at the age of 16. *Id*.

The administrative law judge's finding in this regard enjoys substantial support in the record. First, it was not necessary that Dr. Olah expressly characterize plaintiff's scores as invalid; an administrative law judge may properly consider factors beyond the test score and the examiner's own comments in determining the score's validity. *See Brooks v. Astrue*, No. 08-CV-2608, 2010 WL 1254323, at *5-7. Second, even Dr. Olah noted that, because plaintiff was visibly depressed during the testing session, the score "may be only a minimal estimate of his capabilities." *PAGEID* 500. This comment is significant, in part, because there is a large discrepancy between plaintiff's 2010 full scale IQ score of 63 and his 1991 full scale IQ score of 85, verbal IQ score of 81, and performance IQ score of 94. *PAGEID* 297-304. It is also notable that plaintiff has never been diagnosed with mild mental retardation, but only with borderline intellectual functioning, *see PAGEID* 500, which generally suggests a higher IQ. *See Brooks*, 2010 WL 1254323 at *5-6.

In short, the Court concludes that the administrative law judge's determination that plaintiff's mental impairment does not satisfy Listing 12.05C enjoys substantial support in the record.

Plaintiff also argues that the administrative law judge erred in the hypothetical posed to the vocational expert. Specifically,

14

plaintiff argues that, in asking the vocational expert to assume a claimant limited to "simple, routine, no more than three to four step tasks," the administrative law judge improperly omitted the moderate mental impairments found by Dr. Olah and Dr. Swain and failed to include the restrictions articulated by Nurse Practitioner Marshall. *Statement of Errors*, pp. 12-17.

Hypothetical questions posed to a vocation expert need not include every limitation proposed by the claimant or mentioned by a doctor; rather, the administrative law judge must include in the residual functional capacity all the limitations found by the administrative law judge. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Plaintiff does not argue that the administrative law judge's hypothetical did not include all the limitations actually found by the administrative law judge; plaintiff instead challenges the administrative law judge's residual functional capacity determination.

The residual functional capacity determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). It represents the most, not the least, that a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). In assessing a claimant's residual functional

capacity, an administrative law judge must consider all relevant evidence, including medical source opinions, relating to the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, courts have stressed the importance of medical opinions in determining a claimant's residual functional capacity, and have cautioned administrative law judges against relying on their own expertise in drawing conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).

In the case presently before the Court, the administrative law judge found that plaintiff had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; must avoid jobs requiring fine hearing capabilities; must avoid working in environments with loud background noise; must avoid jobs exposing him to hazards such as dangerous moving machinery or unprotected heights; and cannot drive as part of work. Further, he is limited to simple, routine work involving no more then 3-4 step tasks in an environment without fast-paced production demands that involves only occasional interactions with others.

*PAGEID* 59. In making this assessment, the administrative law judge expressly considered all the medical opinions and provided an explanation for the weight given to each. *PAGEID* 66-67.

The administrative law judge gave some weight to the opinion of Dr. Swain, but determined that the limitation to a more solitary setting with no over-the-shoulder supervision was unwarranted because

plaintiff "testified extensively that various individuals had helped him complete his work even prior to his alleged onset date." *PAGEID* 67. The administrative law judge also gave significant weight to the opinions of Dr. Olah and concluded that, based on plaintiff's record of poor memory and deficits in concentration, he would be limited to "simple, routine work involving no more than 3-4 steps." *Id*. The Court concludes that these findings enjoy substantial support in the record.

In considering the opinion of Nurse Practitioner Marshall, the administrative law judge properly noted that the opinions of nurse practitioners are not entitled to the controlling weight or deference to which the opinions of treating physicians are ordinarily entitled. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(d). The administrative law judge accorded little weight to Ms. Marshall's opinion because of her status and because she had "just begun treating the claimant with minimal records on file supporting her assessment." The Court concludes that these findings also enjoy substantial support in the record.

The Court also disagrees with plaintiff's contention that the administrative law judge improperly substituted his own evaluation of the medical evidence when he found that plaintiff would be limited to "simple, routine, no more than three to four step tasks." *Statement of Errors*, pp. 12-18. The residual functional capacity assessment is expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2),

404.1546.  The reports and opinions of Dr. Sanders, *i.e.*, that plaintiff could perform simple, three-step commands, *PAGEID* 341, and Dr. Swain, that plaintiff is capable of simple to moderate tasks in a setting that does not require more than occasional contact with the public, *PAGEID* 519, provide substantial support for the administrative law judge's assessment.

In short, the administrative law judge's residual functional capacity assessment is supported by substantial evidence in the record.  Because, as discussed *supra*, the administrative law judge included all the limitations found by him in the hypothetical posed to the vocational expert, the Court concludes that the administrative law judge did not err in relying on the vocational expert's testimony. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (the Commissioner may rely on vocational testimony based on a hypothetical that "accurately describes the plaintiff in all significant, relevant respects").

In short, the Court concludes that the decision of the Commissioner is supported by substantial evidence and it must, therefore, be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*,

specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                            *s/ Norah McCann King*
                                         Norah McCann King
January 25, 2013                  United States Magistrate Judge

19